Charity BAILEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0907–CR–397.

Court of Appeals of Indiana.

March 10, 2010.

Transfer Denied June 17, 2010.

Victoria L. Bailey, Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Charity Bailey appeals the thirty-five-year sentence that was imposed following her guilty plea to Neglect of a Dependent Resulting in Death,[1] a class A felony, and to three counts of Neglect of a Dependent,[2] a class D felony. Specifically, Bailey argues that she must be resentenced because the trial court improperly considered certain aggravating factors and overlooked significant mitigating circumstances that were supported by the record. Bailey also contends that the sentence was inappropriate in light of the nature of the offense and her character. Finding that Bailey was properly sentenced, we affirm the judgment of the trial court.

### FACTS[3]

Bailey gave birth to T.B. on August 12, 2004. In November 2004, the Department of Child Services (DCS) removed T.B. from Bailey's care and placed her in foster care with Janice Springfield. However, T.B. was returned to Bailey in December 2005.

In May 2006, Bailey contacted Springfield and told her that she needed a "break." Tr. p. 41–42. As a result, Springfield agreed to keep T.B. for a week. When Springfield picked up T.B., she noticed that T.B. was vomiting and badly bruised. Springfield took T.B. to the hospital, and DCS again removed T.B. from Bailey's care. Bailey denied hurting T.B. and told Springfield that her boyfriend, Lawrence Green, had caused T.B.'s injuries.

At some point, T.B. was adjudicated a Child In Need of Services (CHINS), and she was again placed in Springfield's care. Thereafter, Springfield returned T.B. to DCS and T.B. was placed with Kristen Foster, another licensed foster parent. After T.B. was again returned to Bailey, Foster expressed concern to DCS caseworkers about T.B.'s placement. In August 2006, Bailey became pregnant with her and Lawrence Green's first child together.

---

1. Ind.Code § 35–46–1–4(b)(3).

2. I.C. § 35–46–1–4(a)(1).

3. This case has been the subject of intense media scrutiny. *See http://www. theindychannel.com/news/14702620/detail.* html (last visited Feb. 22, 2010); *http://www. wthr.com/Global/story.asp?S =7432637;* (last visited Feb. 22, 2010); (last visited Feb. 22, 2010) *http://www.indystar.com/apps/pbcs.dll/ article?AID=2008807270380* (last visited Feb. 22, 2010).

In December 2006, Kelly Kochell was assigned to provide home-based counseling to Bailey. Bailey also had a family case manager, a visit supervisor, and a treatment coordinator through DCS and the National Youth Advocate Program (NYAP). These organizations offered substance abuse, anger management, and parenting classes to Bailey. However, Kochell, the family case manager, and a representative from NYAP confronted Bailey about her lack of cooperation with the various services that were offered to her for reunification with T.B.

In March 2007, Bailey contacted the police and reported that Green had slapped and choked her. As a result, an NYAP worker came to Bailey's assistance and helped her move from the apartment. Bailey admitted that Green had beaten her, and she told investigators that Green had inflicted the injuries on T.B. the previous May.

Over the next several months, Bailey became evasive with DCS personnel about where she was living. At some point, Bailey refused DCS's offer to place her in an apartment where she could learn job training and skills and obtain assistance in completing her GED. Bailey also resisted virtually every effort to stay away from Green.

In May 2007, Bailey gave birth to L.G. Throughout the summer, supervised visits between Bailey and T.B. occurred at the NYAP office. Although Bailey left Green for a short period, she eventually returned to him.

On November 27, 2007, police officers were dispatched to Bailey's residence in response to a 911 call that T.B. was unresponsive. When police officers arrived, Bailey told them about a pattern of abuse that had been occurring in the home. For instance, Bailey stated that Green had hung T.B. on a closet hook on one occasion as punishment after T.B. had urinated in her pants.

Bailey also reported that Green hit T.B. with a hard, plastic comb and punched her with his fists the day before. Although T.B. asked for Bailey's help during the incident, she did nothing. Finally, on the morning of November 27, T.B. had another accident in her pants. When Green found out about it, he began punching T.B. and hitting her with a belt. According to Bailey, T.B. "flew" into a wall and fell to the floor as if having a "seizure." Def. Exs. F. Bailey thought that T.B. was "dying," and Green told her to go across the hall and telephone the police. T.B. ultimately died from her injuries.

During the investigation, police officers seized the belt from the residence, and it was matched to some of T.B.'s injuries during the autopsy. It was also discovered that T.B. suffered from a lacerated liver and bleeding of the brain, small intestine, pancreas, and abdomen.

On November 28, 2007, the State charged Bailey with murder, neglect of a dependent, a class A felony, and three counts of class D felony neglect of a dependent. Pursuant to a plea agreement negotiated with the State, Bailey pleaded guilty to class A felony neglect and to all three counts of class D felony neglect. The State agreed to dismiss the murder charge, and the parties agreed that the terms and conditions of sentencing would rest with the trial court's discretion.

The factual bases for Bailey's three class D felony neglect convictions established that between May 17–24, 2006, Bailey had the care and custody of T.B. and knowingly placed T.B.'s life and health in danger by failing to obtain medical treatment for her. Between November 1, 2007, and November 27, 2007, Bailey endangered the lives of T.B. and L.G. (the new baby), by

placing them in unsafe living conditions because the residence was infested with mice, cockroaches, and filth.

As a basis for the class A felony neglect charge, the State alleged that between November 26 and November 27, Green inflicted fatal injuries to T.B. while Bailey stood by, did not stop him, and refused to obtain medical care for her daughter.

At the sentencing hearing that commenced on May 22, 2009, the trial court sentenced Bailey to thirty-five years of incarceration for neglect, a class A felony,[4] and to concurrent terms of 545 days for each class D felony conviction. In imposing the sentence, the trial court identified Bailey's difficult childhood, her young age when she gave birth to T.B., her decision to plead guilty, and her completion of her GED while incarcerated as mitigating factors.

The trial court then observed that T.B. had been "tortured," and found that Bailey's failure to utilize the vast resources that were offered to her through DCS was an aggravating circumstance. Specifically, the trial court commented that

> [B]ut I keep falling back to the opportunities you had. This is a neglect case that didn't arise out of an incident. It's a neglect case that arose over time[,] and over time resources were poured into you—resources that are sitting in this courtroom, mother figures who are in this courtroom but it never worked and in a neglect case I think that is an aggravating factor that trumps so much else in this case. It trumps the mitigators in my opinion and that's the overwhelming consideration I have in this sentence and this is an unusual circumstance perhaps where I'm jumping over the State despite your attorney's argu-

ment because I think those opportunities over time to give [T.B.] away, to somehow do something right instead of a series of wrong decisions that resulted in the death of [T.B.] I think that is an aggravator—that you never took advantage of those opportunities....

Tr. p. 230, 232–33. Bailey now appeals.

## DISCUSSION AND DECISION

### I. Sentencing—Abuse of Discretion

Bailey first claims that her sentence must be vacated because the trial court erroneously determined that her failure to place T.B. for adoption was a proper aggravating circumstance and that her failure to seek medical care for T.B. was improperly identified as an aggravating circumstance because it is an element of the offense. Finally, Bailey contends that the trial court abused its discretion in failing to identify her drug addiction to methamphetamine when she was born, the fact that she was sexually abused as a child, and the fact that she witnessed domestic violence as a youth as mitigating factors.

### A. Standard of Review

Sentencing decisions are within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218. However, a trial court may be found to have abused its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that explains reasons for imposing a sentence where the record does not support the reasons; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; and (4) entering a sentencing statement in which the reasons given

---

4. The sentencing range for a class A felony is from twenty to fifty years, with an advisory sentence of thirty years. Ind.Code § 35–50–2–4.

are improper as a matter of law. *Id.* at 490–91. Moreover, an abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

### B. Aggravating Factors

■ We initially observe that Bailey's contention that the trial court found as an aggravator that she failed to allow for T.B.'s adoption is a mischaracterization of the record. Appellant's Br. p. 22–25. The trial court did not use the term "adoption" and it did not refer to the possibility of Bailey terminating her parental rights as to T.B. Rather, a clear reading of the sentencing statement set forth above reveals that the trial court determined that Bailey's failure to take advantage of the resources offered to her through DCS and the numerous offers by Springfield and Foster to remove T.B. from a dangerous situation was the basis for the aggravating circumstance.

Granted, the trial court observed that T.B. could have done a selfless act and given T.B. "away," thereby "extricat[ing]" T.B. from a situation that Bailey "had to know was not a good situation for [T.B.] to be in." Tr. p. 228–30. T.B. had been in foster care for most of her life, and the trial court recognized that returning her to the living situation with Bailey and Green may very well have cost her life. Thus, Bailey's act of keeping T.B. in her care during Green's abuse when foster parents were nearby and willing to take T.B., was properly identified as an aggravating factor.

We also note that Bailey's argument that the trial court improperly identified an element of the offense as an aggravating circumstance is misplaced. Bailey pleaded guilty to the offense of neglect of a dependent as a class A felony for failing to obtain medical care for T.B. that resulted in her death. Appellant's App. p. 27. That charge pertained to Bailey's failure to obtain medical care for T.B. on November 26 and 27 while Green beat her to death.

Contrary to Bailey's contention, the trial court did not find that failure to be an aggravating factor. Indeed, such a finding may have been improper. *See Smith v. State*, 780 N.E.2d 1214, 1219 (Ind.Ct.App. 2003) (observing that a fact that comprises a material element of the offense may not also constitute an aggravating factor to support an enhanced sentence). Rather, as discussed above, the trial court referenced Bailey's long-term failure to utilize the resources through DCS and the foster parents to properly care for and protect T.B. And the record reflects that this long-term failure contributed significantly to the circumstances that resulted in T.B.'s death. As a result, we conclude that Bailey's claim that the trial court improperly identified any aggravating circumstances fails.

### C. Overlooked Mitigating Factors

Bailey contends that although the trial court identified her difficult childhood as a mitigating factor, it failed to take into account specific instances including her drug addiction at birth, sexual abuse, and episodes of domestic violence. Thus, Bailey argues that because the trial court failed to consider these mitigating factors, she must be resentenced.

At the sentencing hearing, the trial court commented that "I will find [your childhood] to be a mitigator but again it's not an unusual circumstance that we see people in this courtroom who have had more difficult childhoods than you've had but your attorney has presented a very cogent argument about your childhood." Tr. p. 232. In considering Bailey's difficult childhood as a mitigating circumstance, the

trial court specifically detailed her methamphetamine addiction at birth and her "borderline personality" disorder. *Id.* at 227–28, 232.

In our view, it is apparent that Bailey is requesting that we override the trial court's assessment of the weight of the circumstances that she endured as a child. However, our Supreme Court observed in *Anglemyer* that a defendant is no longer permitted to challenge the weight that is afforded to aggravating and mitigating factors. 868 N.E.2d at 491. Thus, we decline to part and parcel out the evidence of Bailey's childhood and assign separate weight to those circumstances.

### II. Inappropriate Sentence

■ Bailey also maintains that the thirty-five-year sentence is inappropriate in light of the nature of the offenses and her character. Specifically, Bailey argues that the sentence "is simply too much in light of the nature of what . . . [she] actually did, of who she is, and of what she has experienced." Appellant's Br. p. 37.

■■ Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although Rule 7(B) does not require us to be "very deferential" to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind.Ct.App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Finally, the defendant bears the burden of persuading the appellate court that the sentence is inappropriate. *Id.*

As for the nature of the offense, the trial court specifically found that T.B. was "tor-tured" and Bailey was "passive toward the torture." Tr. p. 230. In a two-day timeframe during which Bailey had almost unlimited resources available to her to protect her daughter, Green brutally beat T.B. to death with a belt, a comb, and his fists in Bailey's presence. The autopsy revealed hematomas to T.B.'s pancreas and abdomen. *Id.* at 110. Moreover, the pathologist found over forty-one areas of contusion to T.B.'s body, and injuries to T.B.'s neck and armpits were prevalent nearly a week after they were inflicted. *Id.* at 105–06.

With regard to Bailey's character, the record shows that she would not place T.B.'s safety and well-being above herself. Tr. p. 228–29. Bailey's residence was filthy and she exposed her children to constant physical and emotional abuse. Bailey stood by and watched as Green abused the children. Moreover, notwithstanding the DCS and foster mothers' attempts to help Bailey develop a healthy relationship with T.B., she repeatedly rejected those offers.

In sum, the record reflects that Bailey is a self-absorbed and self-focused individual, and we cannot say that the thirty-five-year sentence, which was an enhancement of only five years above the advisory sentence for a class A felony, was inappropriate.

The judgment of the trial court is affirmed.

BAILEY, J., and ROBB, J., concur.